MICHAEL J. KHOURI, ESQ. [CASBN 97654]
KHOURI LAW FIRM, APC
24012 Calle De La Plata, Suite 210
Laguna Hills, California 92653
Telephone:   (949) 336-2433
Fax:              (949) 387-0044
E-mail: mkhouri@khourilaw.com

Attorneys for Plaintiff, SADEK RAOUF EBEID, M.D.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SADEK RAOUF EBEID, M.D.,<br><br>            Plaintiff,<br><br>     vs.<br><br>FACEBOOK, INC.,<br><br>            Defendant. | Case No.<br><br>**COMPLAINT FOR VIOLATION OF UNITED STATES CIVIL RIGHTS ACT (42 U.S.C. § 2000a, et seq.); VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION; VIOLATION OF THE CALIFORNIA UNRUH CIVIL RIGHTS ACT (Cal. Civ. Code, §§ 51, 51.5, 52.); FRAUD/INTENTIONAL MISREPRESENTATION; BREACH OF CONTRACT; BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING; AND UNLAWFUL BUSINESS PRACTICES (Cal. Bus. & Prof. Code, § 17200, et seq.)**<br><br>**DEMAND FOR JURY TRIAL** |

1.     Plaintiff SADEK RAOUF EBEID, M.D. ("Dr. Ebeid" or "Plaintiff") respectfully alleges as follows:

**I.     INTRODUCTION**

2.     This complaint for discrimination in violation of the United States Civil Rights Act, First Amendment to the United States Constitution, the California Unruh Civil Rights Act,

as well as fraud/intentional misrepresentation, breach of contract, breach of implied covenant of good faith and fair dealing, and unlawful business practices, arises from defendant FACEBOOK, INC.'s ("Facebook" or "Defendant") repeated harassment through placing unlawful and arbitrary restrictions on Dr. Ebeid's ability to utilize Facebook's services as a public forum to exercise his right to free speech.

## II. JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff asserts federal claims under the United States Civil Rights Act and the United States Constitution.

4. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as Plaintiff asserts claims under the California Unruh Civil Rights Act ("Unruh Act") which are so related to his federal claims in this action that they form part of the same case or controversy.

5. The Court also has subject matter jurisdiction to all claims alleged in the complaint pursuant to 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

6. The Court has general personal jurisdiction over Facebook, because Facebook's corporate headquarters is located in Menlo Park, California, Facebook conducts a substantial amount of business in the State of California, and has consented to the Court's exercise of personal jurisdiction over Facebook through its Statement of Rights and Responsibilities.[1]

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(1), as the sole Defendant resides in this District, and under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, where Facebook conducts its marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services and other activities. Venue is also proper because Facebook's Statement of Rights and

---

[1] "For any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products ("claim"), you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County." (*See* https://www.facebook.com/terms.php.)

COMPLAINT
Page 2 of 16

Responsibilities requires its users to resolve any disputes in the Northern District of California or a state court located in San Mateo County.

## III. THE PARTIES

8. Dr. Ebeid is a physician licensed by the Arizona Medical Board, and at all time relevant to this action, was a resident of Maricopa County in the State of Arizona.

9. Defendant Facebook is a publicly traded Delaware corporation, headquartered at 1 Hacker Way, Menlo Park, California, 94025. Facebook owns and operates a public forum in the form of an online social networking web site that invites and allows its billion-plus daily users to communicate with each other through the sharing of texts, photographs, and videos.[2] Facebook also owns and operates one of the world's largest advertising platforms.[3] Facebook is and was at all times relevant to this action qualified to do business in the State of California.

## IV. FACTUAL ALLEGATIONS

10. Dr. Ebeid was born and raised in Cairo, Egypt, where he earned his medical degree from the Ain Shams University Faculty of Medicine in 1984. After migrating to the United States, Dr. Ebeid completed his residency at the Good Samaritan Regional Medical Center, and the Saint Joseph's Hospital and Medical Center in Phoenix Arizona, becoming licensed to practice medicine in the State of Arizona in August of 1996. Dr. Ebeid is presently residing in the city of Tempe, in Maricopa County, Arizona, and is the medical director at multiple Arizona facilities.

11. Raouf Ebeid, Dr. Ebeid's late father, and Dr. Ebeid himself who served as an Egyptian Airforce Officer, are well respected in Egypt, and are regarded as influential scholars in the area of social and religious equality. Although Dr. Ebeid has been a citizen of Arizona for over two decades, he has always been passionately involved in the political and national issues of Egypt.

12. Egypt has a population of approximately 79 million, comprised of almost 90

---

[2] *See* https://s21.q4cdn.com/399680738/files/doc_financials/2017/FB_AR_2017_FINAL.pdf (Facebook, Inc. Annual Report for the Fiscal Year Ended December 31, 2017).
[3] *Id.*

COMPLAINT
Page 3 of 16

percent Muslims, about 9 percent Christians, and a relatively small Jewish community. Similar to Dr. Ebeid, the majority of Egyptian Christians belong to the Coptic Orthodox Church.

13. In or about August 2010, Dr. Ebeid created a public page on Facebook, titled "Egypt-Cradle of Love" ("ECL"), the purpose of which was to promote religious tolerance and the mutual acceptance of people of all faiths in Egypt and the Middle East. Relying on Facebook's global reach and influence, Dr. Ebeid dedicated a significant amount of effort and resources to the ECL public page in order to emphasize the religious, historical, geographical, and cultural ties that connects all Christians, Muslims, and Jews in Egypt and the Middle East. Dr. Ebeid's dedication to the ECL page over the past 8 years has resulted in more than 450,000 regular followers, exceeding 18 million total readers since the ECL public page's inception in August, 2010.

14. The ECL page's resounding success was primarily due to the content of Dr. Ebeid's posts on the ECL page, comprised of articles, videos, and audio recordings of his late father who was a judge, professor of law, and a highly regarded spiritual author. Additionally, in order to further the reach of the ECL page's ideals, Dr. Ebeid regularly utilized Facebook's "Boost" feature which uses Facebook's vast advertising platform to publish the posts in the form of an advertisement on Facebook News Feed of other Facebook users within a pre-determined demographic. Generally, Dr. Ebeid would choose all adult Facebook users across Egypt as the advertising demographic, and given the target audience, almost all of Dr. Ebeid's posts on the ECL public page were in Arabic. As a testament to his devotion to his cause during the past 8 years, Dr. Ebeid has dedicated an average of 20 hours per week of his own time on promoting the ECL public page on Facebook, and has spent a substantial sum per month on boosting posts he believed would promote social and moral values.

15. In order to boost a post, the administrator of a public page first creates a post by logging into the public page using the administrator's personal Facebook account, and publishes it on the public page's Facebook page. The administrator can then request that the post be boosted to a certain demographic for a specific amount of time, using Facebook's advertising tools. Once a request to boost a post has been made, Facebook reviews the post to ensure it does

not violate any laws or Facebook's Community Standards, and if approved, the post will run as an advertisement to the selected demographic for the selected amount of time. Regardless of whether a post has been boosted or not, it may be viewed on the public page, whereas boosting is a tool for showcasing the post on other individuals' Facebook News Feeds who may not be followers of the public page.

16. Beginning in early 2017, in protest to the then British Ambassador John Casson's ("Casson") remarks and actions in Egypt, Dr. Ebeid started a political campaign on the ECL page, asking for the recall of Casson as the Ambassador (the "Campaign"). The Campaign was in response to Casson's attack on the Egyptian Judicial System using social media as a public forum. Casson utilized Facebook and other online public forums to criticize Egyptian Judges. An Egyptian District Judge, the honorable Khaled Mahgoub, is widely perceived as the pioneer of ending the Muslim Brotherhood rule in Egypt. Thus, Dr. Ebeid perceived Casson's open condemnation of Egyptian Judges on public forums such as Facebook as a threat to Egypt's stability and an attack on the legitimacy of the duly elected Egyptian president. In response, Dr. Ebeid authored many posts disputing Casson's allegations on Facebook. The Campaign quickly gathered tens of thousands of followers, including many members of the Egyptian judiciary and law enforcement.

17. As the Campaign's popularity and following grew, Dr. Ebeid began experiencing repeated restrictions and interferences by Facebook on his ability to promote the campaign. Although the numerous restrictions on Dr. Ebeid's ability to utilize Facebook's global reach to promote his ideals were achieved by various methods, they all shared a common goal and outcome, which was prohibiting Dr. Ebeid from utilizing Facebook's public forum to exercise his right to free speech in supporting the Campaign he had started and passionately supported. The following allegations identify some examples of the methods used by Facebook to wrongfully limit and restrict Dr. Ebeid's free exercise of his political opinion absent any lawful cause to do so.

///

///

### A. Limitations and Restrictions on Access to the ECL Page

18. In or about March 2017, Dr. Ebeid authored an article titled "A letter form an Egyptian General to the British Ambassador" and posted the article to the ECL page. The article which resulted from Dr. Ebeid's telephonic interview with a retired Egyptian police general, was written in a professional and eloquent manner, free of any defamatory, profane, or lewd remarks, and was in fact published in the Egyptian newspaper Al Isbou. After posting the article on the ECL page, Dr. Ebeid submitted a request to Facebook to have the article boosted. Subsequent to Facebook's review process, the article was approved for boosting and ran as an advertisement for an entire day post approval. However, on the following day, absent any notice or explanation, Facebook removed the article from the ECL page and suspended Dr. Ebeid's personal Facebook page which he used as the administrator of the ECL page, effectively freezing the ECL page for 24 hours. During the suspension, Dr. Ebeid was also restricted from using the Facebook Messenger application to send messages from his personal account.

19. In or about April 2017, Dr. Ebeid's attorney in Egypt, Dr. Ganzoury, became an administrator of the ECL page in order to contribute to the ECL page's Campaign to recall Casson. In or about May 2017, Chancellor Sohair Younis also became an administrator of the ECL page in order to contribute to the Campaign. Ms. Younis is a well renowned Egyptian diplomat who has acted as the Information Chancellor of Egypt's Ministry of Foreign Affairs, a diplomatic attaché on behalf of Egypt in Berlin and London, and is the current editor of the international newspaper Al-Diplomacy. Dr. Ebeid and Ms. Younis regularly contributed to the campaign by publishing posts on the ECL page.

20. On or about June 18, 2017, in anticipation of Egypt's Independence Day from Britain, Dr. Ebeid, Dr. Ganzoury, and Ms. Younis launched a heavily boosted campaign on the ECL page calling for the recall of Casson. Although Facebook did not reject any of the posts for boosting, nor did it remove any of the posts, on June 19, 2018, both Dr. Ebeid and Ms. Younis' personal accounts were removed as administrators of the ECL page, prohibiting them from posting to or editing the ECL page. Correspondingly, Dr. Ganzoury's personal Facebook page which he used as the administrator of the ECL page was permanently closed in its entirety.

1  Accordingly, although none of the posts on the ECL page were removed or objected to by
2  Facebook, the ECL page was once again made inaccessible due to the suspension and restriction
3  of all of the page's administrators.
4      21.    In or about August 2017, Dr. Ebeid authored a post on the ECL page, facetiously
5  taunting the British Prime Minister Theresa May by stating that the Egyptians were playing
6  "sock-ball" with the British Ambassador. Once again, the post was not removed or objected to
7  by Facebook, however, Dr. Ebeid's personal Facebook page which he used as an administrator
8  of the ECL page was suspended for 30 days without any explanation.
9      **B.**    **Limitations and Restrictions Imposed on Others for Supporting Dr. Ebeid's**
10             **Campaign and the ECL Page**
11      22.    In or about September 2017, Dr. Salah Sakr, an Egyptian professor and a Friend
12  of Dr. Ebeid, created a Facebook Group by the name of Friends of Dr. Sadek Raouf Ebeid
13  ("Friends of Ebeid"), in response to the repeated suspensions of Dr. Ebeid's Facebook account
14  and restrictions placed on the ECL page. The Friends of Ebeid group attracted 60,000 members,
15  all of whom hold Dr. Ebeid in high regard and support his movement on the ECL page.
16      23.    The constant interruption of the ECL page and restrictions placed on Dr. Ebeid's
17  personal Facebook page, also aroused the attention of multiple political and free speech activists,
18  including Ben Barrack ("Barrack"), an American conservative political journalist who has
19  authored many articles regarding the rights of Christians in the middle east, published on
20  Breitbart.com, Frontpagemag.com, and WBdaily.com to name a few. In an attempt to further
21  spread the ECL page's message of peace among Egyptians of different faiths and the Campaign
22  to expel Casson, Dr. Ebeid, Barrack, and many other followers of the ECL page, shared posts
23  from the ECL page on their own personal Facebook pages and the Friends of Ebeid group page.
24      24.    On or around December 2017, Dr. Ebeid received a notice from Facebook on his
25  personal Facebook page, stating that sharing posts from the ECL page on his personal page will
26  result in restricted access to his personal page, and restrictions on the use of the Facebook
27  Messenger application.
28      25.    On or about December 31, 2017, Dr. Ebeid was contacted by Barrack stating that

he received a notice from Facebook denying him access to his personal Facebook page, unless he removes a post he had shared from the ECL page.

26. Upon information and belief, numerous Facebook users who had shared posts from the ECL page to their personal page or the Friends of Ebeid group page received similar notices from Facebook. It is important to note that Facebook was not removing the posts themselves due to any perceived inappropriateness, but was chastising other Facebook users for sharing posts from the ECL page in support of Dr. Ebeid's Campaign.

27. In or about April, 2018, Gaber Abdel-hameid, a retired Egyptian police general, had his personal Facebook page suspended for three days after his participation in Dr. Ebeid's Campaign by authoring posts in support of Dr. Ebeid's Campaign on the Friends of Ebeid group page. Upon information and belief, many other individuals where subjected to similar suspensions by Facebook for contributing to the ECL page or the Friends of Ebeid group page.

### C. Restricting Dr. Ebeid from Joining or Posting on the Friends of Ebeid Group Page

28. Starting in or around September 2017, through February 2018, Facebook restricted Dr. Ebeid from joining any Facebook Groups or posting to Facebook Groups approximately 16 times. Facebook removed the restriction each time Dr. Ebeid appealed the decision to restrict him, only to restrict him once again, sometimes on the following day. Facebook failed to provide Dr. Ebeid with any explanation or reason for the 16 times Dr. Ebeid's account was restricted. Upon information and belief, these restrictions were not related to or concerning any purported violations of Facebook's Community Standards, rather they were done with the sole purpose of harassing Dr. Ebeid and to interfere with his ability to utilize Facebook's services as a public forum in exercising his right to free speech.

### D. Repeated Removal of Dr. Ebeid's Posts by Wrongfully Identifying Them as Spam

29. Starting in or around September 2017, through February 2018, Facebook removed numerous posts authored by Dr. Ebeid from the ECL public page and the Friends of Ebeid group page. As a sample, Facebook removed at least five of Dr. Ebeid's posts during the month of

November 2017, claiming that they were spam and in violation of Facebook's Community Standards. However, none of the posts included any content that would be in violation of Facebook's Community Standards. On information and belief, Facebook removed these posts in bad faith, solely as a means to dissuade Dr. Ebeid from continuing his Campaign and to silence Dr. Ebeid's protests against Facebook's repeated interference with his Campaign.

30. For example, on November 16, 2017, Dr. Ebeid posted a statement on the Friends of Ebeid page, which translates to "Why the injustice, Ambassador of democracy." This post was removed as "spam" by Facebook on November 16, 2017.

31. On or about November 22, Dr. Ebeid posted the following statement on the Friends of Ebeid page in English: "The tyranny of Cairo's British Ambassador is unmatched by any Arab dictator! Why is Dr. Ebeid banned from all Facebook Groups?" This post was also removed as "spam" by Facebook.

32. On or about November 29, 2017, after having his account restricted once again, Dr. Ebeid posted a statement on the Friends of Ebeid page, which translates to "Why the freezing? What have I uttered that was inappropriate?" Facebook removed this post as "spam" on November 30, 2018. Feeling frustrated, on November 30, 2018, Dr. Ebeid posted the following statement on the Friends of Ebeid page in English: "What legal grounds do you have in order to ban a writer from posting an opinion? I have been banned from all groups again simply for leading a peaceful campaign to recall the British Ambassador in Cairo…." This post was also removed as "spam" by Facebook on November 30, 2018.

33. It is noteworthy that on numerous occasions, Dr. Ebeid contacted Facebook to ask why his posts were designated as "spam." In response, Facebook would reply by saying "[w]e took another look and found it doesn't go against our Community Standards, so we've restored your post," only to remove another similar post as "spam" mere days later.

34. Dr. Ebeid is informed and believes, and on that basis alleges that Facebook was removing his posts and restricting his access solely to interfere with his ability to campaign for the recall of the British Ambassador.

///

**E.     Repeated Misrepresentations by Notifying Dr. Ebeid that a Post Has Been Boosted, Where in Fact It Was Not**

35.     Dr. Ebeid is informed, believes, and on that basis alleges that throughout the months of April and May of 2018, Facebook made multiple misrepresentations to him regarding the boosting of posts.

36.     In order to reach as many people as possible, Dr. Ebeid would routinely utilize Facebook's boost feature, and would sometimes boost the same or very similar post numerous times using his personal account or the ECL page. Given that Dr. Ebeid's personal page, the ECL public page, and the Friends of Ebeid group page had a significant number of followers in themselves, boosting a post usually resulted in the boosted post reaching upwards of 100,000 individuals on Facebook.

37.     However, in 2018, Dr. Ebeid began noticing that many of his boosted posts were reaching a significantly lower number of individuals on Facebook. For example, a post that was boosted on or about May 20, 2018, reached only 63 people on Facebook, despite the fact that when a post containing the same message and images was boosted previously, it reached 115,891 people on Facebook. Similarly, another post that Dr. Ebeid boosted on or about May 30, 2018, only reached 3 people, where previous boosting of the exact same post had reached 92,397 people on Facebook.

38.     In all of the instances that the boosted posts reached a nominal number of people, Facebook had reviewed the post, approved the post for boosting, and notified Dr. Ebeid that the post was in fact being boosted and published as an advertisement to the people in the designated demographic. Dr. Ebeid relied on Facebook's notification that his posts were in fact being boosted, and that they were being published as advertisements to hundreds of thousands of people. However, the significant discrepancy between the number of people reached despite the fact that the posts, duration of the advertisement, and chosen demographics were the same, demonstrates that Facebook misrepresented to Dr. Ebeid that his posts were being boosted.

39.     Dr. Ebeid has taken an average of 20 hours per week away from his medical practice in order to devote his time to promote his ideals and message on Facebook, and has

spent a substantial sum of money per month on boosting and promotions through Facebook for 8 years. Accordingly, Facebook's malicious and unlawful interference with Dr. Ebeid's ability to use Facebook to promote his message has damaged him in an amount to be proven at trial.

## FIRST CAUSE OF ACTION FOR VIOLATION OF THE UNITED STATES CIVIL RIGHTS ACT

40. Plaintiff re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

41. Under the Civil Rights Act of 1964, "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." (42 U.S.C. § 2000a.)

42. Facebook has a physical location and business within the State of California, which operates a place of public accommodation in the form of an online social networking website, as well as an advertising platform, with services that constitute commerce within the meaning of 42 USC § 2000a.

43. Facebook intentionally, knowingly and purposefully, or recklessly and negligently deprived Dr. Ebeid of equal access to the services and privileges provided by Facebook as a place of public accommodation. Specifically, Facebook deprived Dr. Ebeid of his right to equal access to Facebook's public accommodation services by repeatedly limiting Dr. Ebeid's access to the ECL public page, restricting and punishing others for their association with Dr. Ebeid on the ECL page and the Friends of Ebeid group page, repeatedly restricting Dr. Ebeid's activities on Facebook, repeatedly removing Dr. Ebeid's posts as spam even though the posts did not violate Facebook's Community Standards, and by denying Dr. Ebeid access to the boost feature despite notifying him falsely that his posts have been boosted.

44. Facebook deprived Dr. Ebeid with discrimination and segregation on the basis of race, religion, language, and national origin, in violation of 42 U.S.C. § 2000a.

///

///

## SECOND CAUSE OF ACTION FOR VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

45. Plaintiff re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

46. Pertinent to this action, the First Amendment protects the freedom of speech and association from limitations based on the content of the speech or view point, in public places, quasi-public places, and limited public places.

47. Facebook is the creator, operator, and controller of perhaps the largest public forum in the world, which invites the general public to make use of its website as a public forum for speech related activities.

48. In providing a public forum for speech related activities and regulating its public forum, Facebook is engaging in a traditional government function and is thus bound by the requirements of the First Amendment.

49. Facebook knowingly, willfully, and arbitrarily deprived Dr. Ebeid from exercising his constitutionally protected right to free speech and association, based on the content and viewpoint of his speech activities.

## THIRD CAUSE OF ACTION FOR VIOLATION OF THE CALIFORNIA UNRUH CIVIL RIGHTS ACT

50. Plaintiff re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

51. The California Unruh Civil Rights Act entitles all persons to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever, and prohibits any discrimination or restriction based on race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status. (Cal. Civ. Code § 51.)

52. Furthermore, The California Unruh Civil Rights Act prohibits all business establishments from discriminating against anyone based on the characteristics identified in

subdivision (b) or (e) of Section 51 of the California Civil Code. (Cal. Civ. Code § 51.5.)

53. Facebook is a business establishment within the jurisdiction of the State of California, and as such is obligated to comply with the provisions of the California Unruh Civil Rights Act.

54. Facebook's actions were in violation of the California Unruh Civil Rights Act because Facebook knowingly and willfully restricted Dr. Ebeid's access to its services, based on characteristics protected under subdivision (b) of Section 51 of the California Unruh Civil Rights Act.

55. As a direct result of Facebook's unlawful actions, Dr. Ebeid is entitled to actual damages in addition to statutory damages under Cal. Civ. Code § 52, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION FOR FRAUD/INTENTIONAL MISREPRESENTATION**

56. Plaintiff re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

57. As alleged in paragraph 38 above, on several occasions Facebook represented to Dr. Ebeid that the posts he had requested to be boosted were approved and in fact boosted for the selected duration.

58. However, as alleged in paragraphs 36 through 38 above, the significant disparity between the number of people reached when identical posts were boosted to the same demographic for the same duration, demonstrates that the posts were not boosted, and Facebook's notification that the posts were boosted was false.

59. As the owner and operator of its own advertising platform, Facebook knew that the posts were not boosted, or at the very least, notified Dr. Ebeid that the posts were boosted with reckless disregard as to the truth of the representation, in order to wrongfully interfere with Dr. Ebeid's right to promote the Campaign.

60. Given that Facebook operates a global multibillion-dollar advertising platform, and given his experience with boosting prior to the wrongful actions alleged hereto, Dr. Ebeid reasonably relied on Facebook's representation that the posts were boosted.

61. Facebook's misrepresentation Dr. Ebeid was damaged by Facebook's misrepresentation in an amount to be proven at trial.

62. Dr. Ebeid's reliance on Facebook's representation that the posts were boosted was a substantial factor in causing his damages.

63. The foregoing acts of Facebook were oppressive, malicious, and despicable, and Dr. Ebeid is thus entitled to punitive damages.

### FIFTH CAUSE OF ACTION FOR BREACH OF CONTRACT

64. Plaintiff re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

65. Facebook and Dr. Ebeid had entered into a contract for the use of Facebook's social networking public forum, and use of Facebook's advertising platform.

66. Dr. Ebeid performed all of his obligations under the contract by complying with all of Facebook's terms, and paying for Facebook's advertising services.

67. Facebook breached its obligations under the contract in numerous ways, namely by failing to boost Dr. Ebeid's posts despite notifying Dr. Ebeid that the posts have in fact been boosted.

68. As a direct and proximate result of Facebook's breach, Dr. Ebeid has been damaged in an amount to be proven at trial.

### SIXTH CAUSE OF ACTION FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

69. Plaintiff re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

70. In every contract or agreement, there is an implied promise of good faith and fair dealing, prohibiting each party from taking any actions that unfairly interfere with the right of any other party to receive the benefits of the contract or agreement. Accordingly, the contract between Dr. Ebeid and Facebook also contains this implied promise of good faith and fair dealing.

71. Pursuant to the Parties' contract, Dr. Ebeid was entitled to utilize Facebook's

advertising platform in order to promote his message and ideas posted on Facebook's social networking public forum.

72. Dr. Ebeid is informed, believes, and on that basis alleges that Facebook did not boost Dr. Ebeid's posts, despite Facebook's obligation to do so under terms of the contract.

73. In failing to boost Dr. Ebeid's posts despite notifying him that the posts have been boosted, Facebook has unfairly interfered with Dr. Ebeid's rights under the contract, namely the right to spread his message and adverts to the people within the chosen demographic.

74. As a direct and proximate result of Facebooks conduct in breach of the implied covenant of good faith and fair dealing, Dr. Ebeid was damaged in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION FOR UNLAWFUL BUSINESS PRACTICES

75. Plaintiff re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

76. Facebook's above-described acts constitute "unlawful, unfair or fraudulent business act[s] or practice[s]" within the meaning of the California Business and Professions Code, Section 17200, because Facebook's actions are immoral, unethical, oppressive, unscrupulous, and the harm caused by Facebook's conduct substantially outweighs any benefits the conduct may have.

77. Facebook's above-described acts constitute "unlawful" business practices within the meaning of the California Business and Professions Code, Section 17200, because of the illegality of the alleged violations of the United States Civil Rights Act, the First Amendment to the United States Constitution, and the California Unruh Civil Rights Act, as well as the illegality of the alleged fraud/misrepresentation, breach of contract, and breach of the implied covenant of good faith and fair dealing.

78. As a direct, proximate, and foreseeable result of Facebook's "unlawful, unfair or fraudulent business act[s] or practice[s]," Dr. Ebeid was damaged in an amount to be proven at trial.

///

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. For an order enjoining Facebook, and its subsidiaries, agents, and employees from engaging in unlawful and discriminatory actions against Plaintiff;
2. For compensatory, general, and special damages according to proof at trial;
2. For punitive damages according to proof at trial;
3. For reasonable attorney's fees, costs, and expenses incurred in prosecuting this action; and
3. Any other such relief that the Court deems just and proper.

DATED: November 19, 2018         Respectfully submitted,

                                 KHOURI LAW FIRM, APC


                                 By:   /s/ Michael J. Khouri
                                       MICHAEL J. KHOURI
                                       Attorneys for Plaintiff,
                                       SADEK RAOUF EBEID, M.D.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues.

DATED: November 19, 2018         Respectfully submitted,

                                 KHOURI LAW FIRM, APC


                                 By:   /s/ Michael J. Khouri
                                       MICHAEL J. KHOURI
                                       Attorneys for Plaintiff,
                                       SADEK RAOUF EBEID, M.D.