KEKER, VAN NEST & PETERS LLP
PAVEN MALHOTRA - # 258429
pmalhotra@keker.com
VICTOR H. YU (appearance Pro Hac Vice) - #5502372
vyu@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SADEK RAOUF EBEID, M.D., | Case No. 4:18-cv-07030-PJH |
| Plaintiff, | |
| v. | **DEFENDANT FACEBOOK, INC.'S NOTICE OF MOTIONS, MOTION TO DISMISS COMPLAINT, SPECIAL MOTION TO STRIKE AND FOR ATTORNEY'S FEES AND COSTS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| FACEBOOK, INC., | |
| Defendant. | |

Date:          March 20, 2019
Time:          9:00am
Judge:         Hon. Phyllis J. Hamilton
Dept.:         Courtroom 3

Date Filed: November 19, 2018

Trial Date:  Not Set

1315855.v10

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................1

I.   INTRODUCTION AND STATEMENT OF ISSUES .................................................1

II.  BACKGROUND ..............................................................................................2

    A.   "Content-Restriction" Claims ...............................................................2

    B.   "Boosting" Claims ...............................................................................3

III. THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ...........................4

    A.   Plaintiff's Content-Restriction Claims Must Be Dismissed (Counts I, II, III, and VII) ...............................................................................................4

        1.   Section 230(c)(1) of the CDA Immunizes Facebook From Suit ................4

            a.   Facebook Qualifies for Immunity Under the CDA.........................5

                (i)   Facebook is the provider of an interactive computer service ...................................................................5

                (ii)   The content at issue was generated by someone other than Facebook ...........................................................6

                (iii)   Plaintiff seeks to hold Facebook liable for the exercise of a publisher's traditional editorial functions ..................................................................6

            b.   Plaintiff's claims concerning content restrictions must be dismissed with prejudice.......................................................8

        2.   The First Amendment shields Facebook against Plaintiff's content-restriction-based claims. ...........................................................8

            a.   Plaintiff Cannot Use the First Amendment as a Sword Against Facebook...............................................................8

            b.   Under the First Amendment, Plaintiff Cannot Restrict the Editorial Decisions of a Private Actor ...........................................10

        3.   Each of Plaintiff's Content-Based Claims Fail on Their Own Accord....................................................................................11

            a.   Title II of the Civil Rights Act Does Not Apply to Facebook Because It Is Not a Place of Public Accommodation ...................11

i

1315855.v10

b.    California's Unruh Civil Rights Act Does Not Apply ...................12

       (i)    The Alleged Discrimination Did Not Occur in California ........................................................12

       (ii)   Plaintiff Does Not Allege Intentional Discrimination .......13

B.    The Complaint's Boosting Claims Should be Dismissed with Prejudice ..............14

    1.    Plaintiff Fails to Allege a Breach of Any Contractual Term (Count V) ........................................................14

    2.    Because Plaintiff's Breach of Contract Claim Fails, His Breach of Implied Covenant Claim Also Fails as Well. (Count VI) ..........................16

    3.    Plaintiff Fails to State a Claim for Fraud (Count IV) ...............17

       a.    Plaintiff Does Not Allege any Material Misrepresentation ...........18

       b.    Plaintiff fails to properly allege scienter ......................................18

       c.    Plaintiff fails to allege any resulting damage ...............................19

C.    Plaintiff's UCL Claim Fails Because Plaintiff Fails to Allege that Facebook Engaged in Any Unlawful Conduct (Count VII) ....................................20

D.    Plaintiff's Request for Relief Is Improper ............................................20

IV.   PLAINTIFF'S UNRUH ACT AND UNFAIR COMPETITION LAW CLAIMS SHOULD BE STRICKEN AND FEES SHOULD BE AWARDED TO FACEBOOK ....................................................................21

A.    Plaintiff's Claim Arises Out of Facebook's Exercise of its Free Speech Rights ..........................................................22

    1.    Facebook is a Public Forum for Anti-SLAPP purposes ...........22

    2.    Plaintiff Targets an Issue of Public interest .................................23

    3.    Plaintiff Targets Expressive Activity ...........................................23

B.    Plaintiff Cannot Show a Probability of Success on the Merits ............................24

C.    Facebook Should Be Awarded its Attorney's Fees and Costs for Moving to Strike the Unruh Act and Unfair Competition Law Claim. ..................................24

V.    CONCLUSION ..................................................................24

ii

1315855.v10

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

**Federal Casesyo**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)...............................................................................................4

*Barnes v. Yahoo!, Inc.,*
   570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009)................................5, 6

*Brunette v. Humane Soc'y of Ventura Cty.,*
   294 F.3d 1205 (9th Cir. 2002) ...............................................................................8

*Caraccioli v. Facebook, Inc.,*
   167 F. Supp. 3d 1056 (N.D. Cal. 2016) ..................................................................6, 7

*Carafano v. Metrosplash.com, Inc.,*
   339 F.3d 1119 (9th Cir. 2003) ...............................................................................5

*Clegg v. Cult Awareness Network,*
   18 F.3d 752 (9th Cir. 1994) ...................................................................................11

*Coal. of Clergy, Lawyers, & Professors v. Bush,*
   310 F.3d 1153 (9th Cir. 2002) ...............................................................................10

*Diamond Ranch Acad., Inc. v. Filer,*
   2016 WL 633351 (D. Utah Feb. 17, 2016) ...........................................................21

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,*
   521 F.3d 1157 (9th Cir. 2008) ...............................................................................5

*Fehrenbach v. Zeldin,*
   2018 WL 4242452 (E.D.N.Y. Aug. 6, 2018) .........................................................8

*Flagg Bros. v. Brooks,*
   436 U.S. 149 (1978)...............................................................................................8

*Forbes v. Facebook, Inc.,*
   2016 WL 676396 (E.D.N.Y. Feb. 18, 2016)..........................................................8

*Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.,*
   63 F. Supp. 2d 1127 (N.D. Cal. 1999) ....................................................................20

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.,*
   742 F.3d 414 (9th Cir. 2014) ...........................................................................13, 20

iii

*hiQ Labs, Inc. v. LinkedIn Corp.*,
 273 F. Supp. 3d 1099 (N.D. Cal. 2017) ............................................................21, 22

*Hudgens v. NLRB*,
 424 U.S. 507 (1976).......................................................................................................8

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*,
 515 U.S. 557 (1995).......................................................................................................9

*Igbonwa v. Facebook, Inc.*,
 No. 18-CV-02027-JCS, 2018 WL 4907632 (N.D. Cal. Oct. 9, 2018).....................7

*Ileto v. Glock Inc.*,
 349 F.3d 1191 (9th Cir. 2003) .....................................................................................4

*J2 Cloud Servs., Inc. v. Fax87*,
 No. 13-05353 DDP, 2016 WL 6833904 (C.D. Cal. Nov. 18, 2016) ......................18

*JMP Sec. LLP v. Altair Nanotechnologies Inc.*,
 880 F. Supp. 2d 1029 (N.D. Cal. 2012) ...................................................................18

*Klayman v. Zuckerberg*, 753 F.3d 1354 (D.C. Cir. 2014). .........................................6, 7

*Knievel v. ESPN*,
 393 F.3d 1068 (9th Cir. 2005) ...................................................................................14

*La'Tiejira v. Facebook, Inc.*,
 272 F. Supp. 3d 981 (S.D. Tex. 2017) ........................................................................9

*Lancaster v. Alphabet Inc.*,
 2016 WL 3648608 (N.D. Cal. July 8, 2016)................................................................7

*Langdon v. Google, Inc.*,
 474 F. Supp. 2d 622 (D. Del. 2007) ............................................................................9

*Maloney v. T3Media, Inc.*,
 94 F. Supp. 3d 1128 (C.D. Cal. 2015) ......................................................................22

*Miami Herald Publ'g Co. v. Tornillo*,
 418 U.S. 241 (1974).......................................................................................................9

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
 591 F.3d 250 (4th Cir. 2009) .......................................................................................5

*United States ex rel Newsham v. Lockheed Missiles & Space Co., Inc.*,
 190 F.3d 963 (9th Cir. 1999) .....................................................................................20

*Nyabwa v. Facebook*,
 No. 2:17-CV-24, 2018 WL 585467 (S.D. Tex. Jan. 26, 2018)................................8

1315855.v10

*Perfect 10, Inc. v. CCBill LLC*,
    481 F.3d 751 (9th Cir. 2007), *opinion amended and superseded on denial of reh'g*, 488 F.3d 1102 (9th Cir. 2007) .......................................................................... 4

*Prager Univ. v. Google LLC*,
    No. 17-CV-06064-LHK, 2018 WL 1471939 (N.D. Cal. Mar. 26, 2018) ................................. 9

*PruneYard Shopping Center v. Robins*,
    447 U.S. 74 (1980) .......................................................................................................... 9

*Reno v. Am. Civil Liberties Union*,
    521 U.S. 844 (1997) ...................................................................................................... 10

*Riggs v. MySpace, Inc.*, 444 F. App'x 986
(9th Cir. 2011) ..................................................................................................................... 7

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*,
    487 U.S. 781 (1988) ........................................................................................................ 9

*Shahangian v. Bank of Am. Nat'l Ass'n*,
    No. CV15-1919 DMG, 2015 WL 12696038 (C.D. Cal. Dec. 1, 2015) ................................. 19

*Shulman v. Facebook.com*,
    2017 WL 5129885 (D.N.J. Nov. 6, 2017) ......................................................................... 8

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) ........................................................................ 6, 7

*Smith v. Capital One Fin. Corp.*,
    No. C 11-3425 PJH, 2012 WL 1669347 (N.D. Cal. May 11, 2012) ................................... 14

*Smith v. Pride Mobility Prods. Corp.*,
    No. 16-CV-04411-LHK, 2016 WL 6393549 (N.D. Cal. Oct. 28, 2016) .............................. 13

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) .......................................................................................... 4

*Sousanis v. Nw. Airlines, Inc.*,
    2000 WL 34015861 (N.D. Cal. Mar. 3, 2000) ................................................................ 12

*Sterling Cross Def. Sys., Inc. v. Dolarian Capital, Inc.*,
    No. 1:13-CV-01773-AWI, 2014 WL 2767401 (E.D. Cal. June 18, 2014) ............................ 18

*Tat Tohumculuk, A.S. v. H.J. Heinz Co.*,
    2013 WL 6070483 (E.D. Cal. Nov. 14, 2013) ................................................................. 12

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ....................................................................................... 17

v

1315855.v10

*Warner v. Tinder Inc.*,
105 F. Supp. 3d 1083 (C.D. Cal. 2015) ................................................................. 12

*Welsh v. Boy Scouts of Am.*,
993 F.2d 1267 (7th Cir. 1993) ............................................................................... 11

*Whittlestone, Inc. v. Handi-Craft Co.*,
618 F.3d 970 (9th Cir. 2010) ................................................................................ 20

*Yamauchi v. Cotterman*,
84 F. Supp. 3d 993 (N.D. Cal. 2015) ..................................................................... 18

*Young v. Facebook, Inc.*,
2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) ........................................................... 8

*Young v. Facebook, Inc.*,
790 F. Supp. 2d 1110 (N.D. Cal. 2011) ........................................................... 11, 14

*Zeran v. Am. Online, Inc.*,
129 F.3d 327 (4th Cir. 1997) ................................................................................... 6

*Zhang v. Baidu.com, Inc.*,
10 F. Supp. 3d 433 (S.D.N.Y. 2014) ......................................................................... 9

**State Cases**

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503 (1994) ............................................................................................. 18

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
2 Cal. 4th 342 (1992) ............................................................................................. 16

*Cross v. Facebook, Inc.*,
14 Cal. App. 5th 190 (2017) ......................................................................... 6, 21, 22

*Engalla v. Permanente Med. Grp., Inc.*,
15 Cal. 4th 951 (1997) ........................................................................................... 17

*Erlich v. Menezes*,
21 Cal. 4th 543 (1999) ........................................................................................... 18

*Foley v. Interactive Data Corp.*,
47 Cal. 3d 654 (1988) ............................................................................................ 16

*Frances T. v. Vill. Green Owners Ass'n*,
42 Cal. 3d 490 (1986) ............................................................................................ 14

*Good Gov't Grp. v. Super. Ct.*,
22 Cal. 3d 672 (1978) ............................................................................................ 20

vi

1315855.v10

*Guz v. Bechtel Nat'l, Inc.*,
  24 Cal. 4th 317 (2000) ................................................................................16

*Ingels v. Westwood One Broad. Servs., Inc.*,
  129 Cal. App. 4th 1050 (2005) ...................................................................10

*Koebke v. Bernardo Heights Country Club*,
  36 Cal. 4th 824 (2005) ................................................................................13

*Krantz v. BT Visual Images, LLC*,
  89 Cal. App. 4th 164 (2001) .......................................................................19

*Kronemyer v. Internet Movie DataBase, Inc.*,
  150 Cal. App. 4th 941 (2007) .....................................................................21

*Manderville v. PCG&S Grp., Inc.*,
  146 Cal. App. 4th 1486 (2007) ...................................................................16

*Nagel v. Twin Labs., Inc.*,
  109 Cal. App. 4th 39 (2003) .......................................................................22

*Navellier v. Sletten*,
  29 Cal. 4th 82 (2002) ......................................................................20, 21, 23

*Nygard, Inc. v. Uusi-Kerttula*,
  159 Cal. App. 4th 1027 (2008) ...................................................................22

*Pfeiffer Venice Props. v. Bernard*,
  101 Cal. App. 4th 211 (2002) .....................................................................23

*Rivero v. Am. Fed'n of State, Cty., & Mun. Emps., AFL-CIO*,
  105 Cal. App. 4th 913 (2003) .....................................................................22

*Simmons v. Allstate Ins. Co.*,
  92 Cal. App. 4th 1068 (2001) .....................................................................20

*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*,
  100 Cal. App. 4th 44 (2002) .......................................................................16

*Wong v. Jing*,
  189 Cal. App. 4th 1354 (2010) ...................................................................22

**Federal Statutes**

Civil Rights Act of 1964 Title II, 42 U.S.C. § 2000a ........................................4, 7, 10

Communications Decency Act ...........................................................................4, 5, 6, 7

1315855.v10

**State Statutes**

Cal. Civ. Code § 51(b) ...........................................................................................12

California Code of Civil Procedure § 425.16 .......................................1, 2, 20, 21, 22

California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51, 51.5, 52 ..............................4

Cal. Bus. & Prof. Code §§ 17200, *et. seq.* ................................................4, 7, 13, 19, 20

**Rules**

Federal Rule of Civil Procedure Rule 9(b) ...................................................................17

Federal Rule of Civil Procedure 12(b)(6) ............................................................1, 2, 4

**Constitutional Provisions**

U.S. Const., Amend. I ....................................................................................*passim*

DEFENDANT FACEBOOK, INC.'S NOTICES OF MOTION AND MPA I/SO
MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE AND REQUEST FOR FEES
Case No. 4:18-cv-07030-PJH

1315855.v10

**NOTICE OF MOTIONS**

On March 20, 2019 at 9 a.m., in the United States District Court for the Northern District of California, Courtroom 3, 3rd Floor, 1301 Clay Street, Oakland, California, 94612, Defendant Facebook, Inc. moves the Court to dismiss the Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).  In addition, under section 425.16 of the California Code of Civil Procedure, Defendant moves for an order striking from the Complaint Count Three in its entirety and Count Seven as it relates to Facebook's alleged content restriction and for an order awarding Defendant its reasonable costs and attorney's fees in an amount determined by a later submission. Defendant's notice of its two separate motions constitute the statement of issues it asks this Court to decide.

Defendant's motion and its requests for relief are based on the following Memorandum of Points and Authorities, the Declaration of Victor H. Yu in support, all other papers on file or to be filed in this action, the arguments of counsel, and any other matters that the Court may properly consider.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION AND STATEMENT OF ISSUES**

Plaintiff Sadek Ebeid, a resident of Arizona, runs a Facebook page called "Egypt—Cradle of Love."  The page is designed to "promote religious tolerance and the mutual respect of people of all faiths in Egypt and the Middle East."  *See* Dkt. No. 1 ("Compl.") ¶ 13.  Beyond promoting religious brotherhood, the page also engages in Egyptian politics.  Plaintiff alleges that he grew suspicious of the United Kingdom's Ambassador to Egypt and launched a "political campaign" on the page demanding the recall of the Ambassador.  In response, Plaintiff alleges, Facebook began to restrict his access to the page and remove various posts.  Plaintiff also alleges that, despite paying for advertising services, Facebook failed to promote some of the posts on his page during the two-month period from April-May 2018.

Plaintiff claims this action "deprived [him] with discrimination and segregation on the basis of race, religion, language, and national origin."  *Id*. ¶ 44.  He claims this action also

1

resulted in violations of the Civil Rights Act, the First Amendment, the Unruh Act, the Unfair Competition law, breach of contract, breach of the implied covenant of good faith, and fraud.

Facebook rejects discrimination of any sort and categorically denies discriminating against Plaintiff in particular.  But even assuming Plaintiff's claims are true, this lawsuit must still be dismissed with prejudice for the following reasons:

*First*, in addition to the individual pleading deficiencies in each of his claims, Plaintiff's complaint is fundamentally flawed because it is foreclosed by both law and Plaintiff's own agreements with Facebook.  Even if Plaintiff's allegations are assumed to be true, federal law entitles Facebook to remove or restrict access to content that users upload to the Facebook platform.  And under Facebook's advertising agreements, Plaintiff granted Facebook clear discretionary control over the promotion of his ads, including the scope and reach of his advertisements.  As Plaintiff cannot cure these deficiencies, this action must be dismissed with prejudice.  *See* Fed. R. Civ. P. 12(b)(6).  *Second*, Facebook moves this Court to strike Plaintiff's Unruh Act and Unfair Competition Law claims under Cal. Code Civ. Proc. § 425.16 (California's "Anti-SLAPP" law) and to award it attorney's fees for having to move to strike those claims.

## II.   BACKGROUND

Plaintiff makes two sets of allegations against Facebook.  He accuses Facebook of restricting his content ("Content-Restriction" allegations) and failing to promote his posts ("Boosting" allegations).

### A.   "Content-Restriction" Claims

Much of the Complaint centers on Facebook's alleged restrictions of user-generated content.  Plaintiff created and administered a public Facebook page called "Egypt-Cradle of Love" ("ECL") to discuss political and social issues in Egypt and the Middle East.  Compl. ¶ 13.

Plaintiff alleges that Facebook deleted several of his posts related to the United Kingdom's ambassador to Egypt.  In March 2017, Plaintiff posted an article to the ECL page concerning the United Kingdom's ambassador.  *Id.* ¶ 18.  The following day, Facebook allegedly removed the post and suspended Plaintiff's Facebook page.  *Id.*  In June 2017, Plaintiff and his

cohorts launched a paid campaign calling for the recall of the ambassador.  *Id.* ¶ 20.  The next day, Plaintiff was removed as an administrator of the ECL page.  *Id.*  In August 2017, Plaintiff authored another post concerning British Prime Minister Theresa May; afterwards, Plaintiff's account was suspended for 30 days.  *Id.* ¶ 21.

From September 2017 to February 2018, Facebook allegedly also restricted Plaintiff's access to the platform.  He asserts that Facebook restricted him from joining or posting in any Facebook Group.  *Id.* ¶ 28.  In December 2017, Plaintiff allegedly received a notice that sharing posts from his ECL page on his personal page would result in restricted access to Facebook's services.  *Id.* ¶ 24.

Finally, Plaintiff alleges that from September 2017 to February 2018, Facebook removed several posts on the ECL public page and on a related page called the "Friends of Ebeid."  *Id.* ¶ 29.  These posts related to Plaintiff's opinions criticizing the British Ambassador to Egypt.  *See id.* ¶¶ 29–32.  Some of these posts were allegedly marked as spam in violation of Facebook's Community Standards, although Plaintiff claims the posts were not spam.  *See id.*

### B.    "Boosting" Claims

Plaintiff also accuses Facebook of failing to promote posts during a two-month period from April to May 2018.  *Id.* ¶ 35.  As Plaintiff alleges, "boosting" is a promotional tool that allows users to transform posts from their page into advertisements that can run in the Facebook feeds of other users.  *Id.* ¶ 14.  After a user requests a post to be boosted and Facebook approves the post, Facebook notifies the user that the post is being promoted.  *Id.* ¶ 37.  Plaintiff allegedly paid Facebook to boost posts made on his personal account or on the ECL page.  *Id.* ¶ 36.

Without citing any promise by Facebook concerning the range of users that Plaintiff's posts would reach, Plaintiff complains that Facebook failed to promote his posts to a sufficiently large number of users.  He cites only two examples.  On May 20, 2018, Plaintiff allegedly paid for a post to be boosted.  The post reached only 63 people, despite the fact that a previously-boosted post with the same content reached roughly 115,00 people.  *Id.* ¶ 37.  Ten days later, Plaintiff allegedly paid for another post to be boosted, but the post only reached three individuals.

1315855.v10

A previous boosting of the same post reached 92,397 people.  *See id.*  Plaintiff complains that in these instances, he relied on Facebook's notification that the posts were being boosted.  *Id.* ¶ 38.  Notably, Plaintiff does *not* allege he was overcharged for any posts that Facebook allegedly improperly boosted.

## III.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003).  A complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory or has not alleged sufficient facts to support a cognizable legal theory.  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  The complaint must state a claim for relief that is plausible on its face, and legally conclusory statements—those not supported by sufficient factual allegations— need not be accepted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

### A.    Plaintiff's Content-Restriction Claims Must Be Dismissed (Counts I, II, III, and VII)

Plaintiff brings four claims challenging Facebook's restrictions on his user-generated content: Count I, asserting a violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a ("Title II"), *see* Compl. ¶¶ 40–44; Count II, asserting a violation of the First Amendment of the United States Constitution, *see id.* ¶¶ 45–49; Count III, asserting a violation of California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51, 51.5, 52 ("the Unruh Act), *see id.* ¶¶ 50–55; and Count VII, alleging "unlawful" business practices under Cal. Bus. & Prof. Code §§ 17200, *et. seq.* (the "UCL").  Not only do all of these claims suffer from fatal pleading defects, they are all seeking to hold Facebook liable for regulating what it can host on its platform and are therefore barred by section 230(c)(1) of the Communications Decency Act.  And, they are additionally prohibited by the First Amendment.

#### 1.    Section 230(c)(1) of the CDA Immunizes Facebook From Suit

The Communications Decency Act ("CDA")—passed by Congress in 1996 and codified at 47 U.S.C. § 230—establishes "broad federal immunity to any cause of action that would make

4

service providers liable for information originating with a third-party user of the service." *Perfect 10, Inc. v. CCBill LLC*, 481 F.3d 751, 767 (9th Cir. 2007) (citations omitted), *opinion amended and superseded on denial of reh'g*, 488 F.3d 1102 (9th Cir. 2007).

Section 230(c)(1) states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." And immunity extends to activities of a service provider that involve its moderation of third-party content, such as "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009), *as amended* (Sept. 28, 2009). "[S]o long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the editing or selection process." *Carafano v. Metrosplash.com, Inc*., 339 F.3d 1119, 1124 (9th Cir. 2003).

Section 230(c)(1) immunity "is generally accorded effect at the first logical point in the litigation process," because its "immunity is an *immunity from suit* rather than a mere defense to liability." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc*., 591 F.3d 250, 254 (4th Cir. 2009) (citations omitted). Further, the CDA "must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008).

### a.    Facebook Qualifies for Immunity Under the CDA

Facebook is entitled to immunity under section 230(c)(1) if (1) it is a "provider . . . of an interactive computer service," (2) the allegedly offending content was "provided by another information content provider," and (3) the plaintiff's claims treat Facebook as the "publisher" of that content. 47 U.S.C. § 230(c)(1). Each requirement is satisfied here.

### (i)    Facebook is the provider of an interactive computer service

Facebook undoubtedly qualifies as a "provider" of an "interactive computer service." The CDA defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Plaintiff himself acknowledges that Facebook operates an "online

5

DEFENDANT FACEBOOK, INC.'S NOTICES OF MOTION AND MPA I/SO
MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE AND REQUEST FOR FEES
Case No. 4:18-cv-07030-PJH

1315855.v10

social networking web site that invites and allows its billion-plus daily users to communicate with each other through the sharing of texts, photographs, and videos."  Compl. ¶ 9.  To Facebook's knowledge, every court to consider whether Facebook meets this definition has rightly concluded that it does.  *See e.g., Sikhs for Justice "SFJ", Inc. v. Facebook, Inc*., 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015); *Caraccioli v. Facebook, Inc*., 167 F. Supp. 3d 1056, 1065 (N.D. Cal. 2016); *Cross v. Facebook, Inc*., 14 Cal. App. 5th 190, 206 (2017); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014).

### (ii)    The content at issue was generated by someone other than Facebook

For the second requirement, the content at issue must come from an "information content provider" other than Facebook.  "Information content provider" is broadly defined as "any person or entity that is responsible, in whole or in part, for the creation or development" of the content at issue.  47 U.S.C. § 230(f)(3).  Facebook's users, including Plaintiff, fit this definition.  *See, e.g.*, *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014).  Here, Plaintiff's content-restriction claims arise entirely out of content allegedly created by third-parties—Plaintiff or persons affiliated with him.  *See* Compl. ¶¶ 18–21 (complaining about removal of Plaintiff and an associate as administrators of the ECL page); ¶ 28 (alleging Plaintiff was restricted from posting in the Friends of Ebeid group); ¶¶ 29–34 (alleging Plaintiff's posts were removed as spam).  Because someone other than Facebook created the content at issue, the second requirement for Section 230(c)(1) immunity has been met.

### (iii)   Plaintiff seeks to hold Facebook liable for the exercise of a publisher's traditional editorial functions

For the third and final requirement for Section 230(c)(1) immunity, a plaintiff must "seek[] to hold a service provider liable for its exercise of a publisher's traditional editorial functions-such as deciding whether to publish, withdraw, postpone or alter content."  *Zeran v. Am. Online, Inc*., 129 F.3d 327, 330 (4th Cir. 1997).

That is precisely what Plaintiff seeks to do here.  Here, all of Plaintiff's claims center on alleged decisions by Facebook to remove or restrict content.  Plaintiff challenges the alleged

removal and restriction of his ECL Facebook page, Compl. ¶¶ 18–21, his ability to post and join the Friends of Ebeid group, *id.* ¶ 28, and removal of various posts he authored, *id.* ¶¶ 29–34. Each of these claims share the same theme:  to challenge Facebook's moderation of user-generated material.  Such decisions –"whether to print or retract a given piece of content" – go to "the very essence of publishing" under section 230(c)(1) of the CDA.  *Klayman*, 753 F.3d at 1359.  "[P]ublication involves reviewing, editing and deciding whether to publish or withdraw from publication third party content."  *Barnes*, 570 F.3d at 1102.  As courts applying Section 230(c)(1) of the CDA have explained, "removing content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove."  *Id.* at 1102–03 (emphasis added).

Courts therefore have repeatedly held that blocking or removing a plaintiff's posts or suspending a plaintiff's account is "publisher conduct immunized" by section 230(c)(1) of the CDA.  *See Sikhs for Justice*, 144 F. Supp. 3d 1088, 1089 (N.D. Cal. 2015); *Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011) ("Section 230(c)(1) immunizes "decisions to delete [plaintiff's] user profiles."); *Lancester v. Alphabet Inc.*, 2016 WL 3648608, at *2–3 (N.D. Cal. July 8, 2016) (dismissing claims based on removal of plaintiff's videos under Section 230(c)(1)).

As a matter of law, Plaintiff cannot assert a cause of action against Facebook for such claims since "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."  *Roommates*, 521 F.3d at 1170–71.

The decision in *Sikhs for Justice* is on point.  144 F. Supp. 3d at 1089.  There, a political advocacy group sued Facebook for blocking access to its page in India.  *See id.*  The court held that the group's federal claims were barred by § 230(c)(1) because Facebook's decision to bar access in India to the plaintiff's page directly impinged on Facebook's exercise of a traditional publisher role: the decision of "whether to publish" third-party content.  *Id.* at 1095; *see also Lancester v. Alphabet Inc.*, 2016 WL 3648608, at *2–3 (N.D. Cal. July 8, 2016) (dismissing claims challenging YouTube's removal of plaintiff's videos because "to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher").  Plaintiff's

7

DEFENDANT FACEBOOK, INC.'S NOTICES OF MOTION AND MPA I/SO
MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE AND REQUEST FOR FEES
Case No. 4:18-cv-07030-PJH

1315855.v10

claims are a direct analogue to the ones in *Sikhs for Justice*, and as such, they are barred by section 230(c)(1) as well.

> **b.    Plaintiff's claims concerning content restrictions must be dismissed with prejudice.**

Plaintiff's Title II, Unruh Act, and part of his UCL claim are all premised on allegations that Facebook improperly restricted access to user content generated by Ebeid.  Because the CDA clearly immunizes Facebook from these claims, these claims should be dismissed with prejudice. *See Sikhs for Justice*, 144 F. Supp. 3d at 1096 (CDA immunity warranted dismissing Title II ADA claim with prejudice); *Caraccioli*, 167 F. Supp. 3d at 1067 ("Because Plaintiff's claims against Facebook are barred as a matter of law by § 230(c), the court finds that allowing for their amendment would be futile."); *Igbonwa v. Facebook, Inc.*, No. 18-CV-02027-JCS, 2018 WL 4907632, at *8 (N.D. Cal. Oct. 9, 2018) (dismissing claims with prejudice given immunities afforded under the CDA).

> **2.    The First Amendment shields Facebook against Plaintiff's content-restriction-based claims.**

> **a.    Plaintiff Cannot Use the First Amendment as a Sword Against Facebook.**

In his second cause of action, Plaintiff asserts that Facebook's restriction of his user-generated content violates the First Amendment.  Compl. ¶¶ 45–49.  Plaintiff, however, cannot use the First Amendment as a sword against Facebook because Facebook is not a state actor.

The First Amendment protects against restrictive state action.  "[T]he constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state." *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976).  Unsurprisingly, numerous courts have held

that Facebook is *not* a state actor under the First Amendment and that it cannot be held liable for restricting another's speech.[1]

Plaintiff acknowledges that Facebook is a private company, *see* Compl. ¶ 9, but suggests that Facebook can be held liable under the First Amendment because it performs a public function as a "public forum for speech related activities," *id.* ¶ 48.  While private actors can be liable under the First Amendment if they perform a public function, "[p]rivate activity becomes a public function only if that action has been traditionally the exclusive prerogative of the State." *Brunette v. Humane Soc'y of Ventura Cty.*, 294 F.3d 1205, 1214 (9th Cir. 2002) (citations omitted).  And "while many functions have been traditionally performed by governments, very few have been exclusively reserved to the State." *Flagg Bros. v. Brooks*, 436 U.S. 149, 158 (1978).  Examples of functions that have been deemed to be "traditionally the exclusive prerogative of the State" include "hold[ing] elections," "govern[ing] a town," and "serv[ing] as an international peacekeeping force." *Brunette*, 294 F.3d at 1214 (citations omitted).  Facebook is an internet company that allows users to share personal content and run advertisements; in doing so, it does *not* exercise a role traditionally performed by the government.  *Cf. Prager Univ. v. Google LLC*, No. 17-CV-06064-LHK, 2018 WL 1471939, at *6 (N.D. Cal. Mar. 26, 2018) ("Plaintiff does not point to any persuasive authority to support the notion that [Google and YouTube], by creating a 'video-sharing website' and subsequently restricting access to certain videos that are uploaded on that website . . . have somehow engaged in one of the 'very few' functions that were traditionally 'exclusively reserved to the State.'").

---

[1]  *See, e.g.*, *Fehrenbach v. Zeldin*, 2018 WL 4242452, *3 (E.D.N.Y. Aug. 6, 2018) (dismissing constitutional claims against Facebook for failure to establish that Facebook is a state actor); *Nyabwa v. Facebook*, No. 2:17-CV-24, 2018 WL 585467, at *1 (S.D. Tex. Jan. 26, 2018) (same); *Shulman v. Facebook.com*, 2017 WL 5129885, *4 (D.N.J. Nov. 6, 2017) (same); *Forbes v. Facebook, Inc.*, 2016 WL 676396, at *2 (E.D.N.Y. Feb. 18, 2016) (declining to hold that Facebook's actions could be attributable to state); *Young v. Facebook, Inc.*, 2010 WL 4269304, at *2 (N.D. Cal. Oct. 25, 2010) (dismissing Section 1983 action against Facebook for failure to allege "action under color of state law").

1315855.v10

1

           b.      **Under the First Amendment, Plaintiff Cannot Restrict the Editorial Decisions of a Private Actor**

2

      In addition, Plaintiff's content-restriction claims are fatally flawed because they would

3

violate Facebook's First Amendment rights under the U.S. Constitution.  The First Amendment

4

protects "the decision of both what to say and what not to say."  *Riley v. Nat'l Fed'n of the Blind*

5

*of N. Carolina, Inc.*, 487 U.S. 781, 797 (1988).  Plaintiff cannot, consistent with the First

6

Amendment, tell Facebook "what it must print."  *PruneYard Shopping Center v. Robins*, 447 U.S.

7

74, 88 (1980).  This, however, is precisely what the Complaint purports to do.

8

      Plaintiff is asking the Court to punish Facebook for removing certain content from its

9

platform or limiting what content can be posted to its platform.  *See, e.g.*, Compl. ¶¶ 18–34

10

(reciting instances where Plaintiff's posts were allegedly removed or his ability to post new

11

content was limited).  But the First Amendment safeguards Facebook's "exercise of editorial

12

control or judgment."  *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S.

13

557, 575 (1995).  Just as a newspaper cannot be required to publish op-ed columns, Facebook

14

cannot be required to host content on its platform that it chooses to reject.  *See Miami Herald*
*Publ'g Co. v. Tornillo,* 418 U.S. 241, 258 (1974).

15

      Courts have consistently held that these First Amendment protections extend to Internet

16

platforms, including Facebook.  *See, e.g., La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 994

17

(S.D. Tex. 2017); *Zhang v. Baidu.com, Inc.,* 10 F. Supp. 3d 433 (S.D.N.Y. 2014); *Langdon v.*

18

*Google, Inc.*, 474 F. Supp. 2d 622, 629–30 (D. Del. 2007) (concluding that the First Amendment

19

protects Google against attempts to force it to "place Plaintiff's ads for his websites in prominent

20

places on [its] search engine results"); *Reno v. Am. Civil Liberties Union*, 521 U.S. 844 (1997)

21

(First Amendment protections extend to the Internet).

22

      Moreover, courts, reciting the First Amendment, have dismissed the exact sort of claims

23

Plaintiff alleges here.  *See Baidu*, 10 F. Supp. 3d at 443–44 (dismissing Civil Rights Act claim);

24

*Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1074 (2005) (dismissing

25

Unruh Act claim).  Because Facebook's decisions to remove content from its service are squarely

26

protected by the First Amendment, Plaintiff's content-restriction claims must be dismissed.

10

DEFENDANT FACEBOOK, INC.'S NOTICES OF MOTION AND MPA I/SO
MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE AND REQUEST FOR FEES
Case No. 4:18-cv-07030-PJH

1315855.v10

3.     **Each of Plaintiff's Content-Based Claims Fail on Their Own Accord**

Because Congress and the Constitution directly protect Facebook's actions in this case, this Court does not have to delve into the specifics of each of Plaintiff's claims.  Still, an analysis of each of Plaintiff's content-restriction allegations reveals additional flaws that, on their own, warrant dismissal of each claim with prejudice.

a.     **Title II of the Civil Rights Act Does Not Apply to Facebook Because It Is Not a Place of Public Accommodation**

In his first cause of action, Plaintiff asserts that Facebook violated Title II of the Civil Rights Act.  Compl. ¶¶ 40–44.  However, Title II applies only to places of public accommodation—something Facebook is not.[2]

Under Title II, "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations **of any place of public accommodation**, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin."  42 U.S.C. § 2000a(a) (emphasis added).  Section 2000a(b) of the statute defines a "place of public accommodation" with an emphasis on physical locales, stating that Title II covers:

> (1) any inn, hotel, motel, or other establishment which provides lodging to transient guests  . . . ; (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises  . . . ; (3) any motion picture house, theatre, concert hall, sports arena, stadium or other place of exhibition or entertainment; and (4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

Accordingly, courts have been reluctant to conclude that defendants without a sufficient connection to a physical facility can be deemed a public place of accommodation.  *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 755 (9th Cir. 1994) (A nonprofit organization focused on

---

[2]  To the extent Plaintiff seeks to hold Facebook accountable for restricting the activities of others, Compl. ¶¶ 22–27, 43, he cannot.  "[A] litigant may assert only his own legal rights and interests and cannot rest a claim to relief on the legal rights or interests of third parties."  *Coal. of Clergy, Lawyers, & Professors v. Bush*, 310 F.3d 1153, 1163 (9th Cir. 2002).

11

DEFENDANT FACEBOOK, INC.'S NOTICES OF MOTION AND MPA I/SO
MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE AND REQUEST FOR FEES
Case No. 4:18-cv-07030-PJH

public awareness of cults was not a "place of public accommodation" because it had "no affiliation with any public facility."); *Welsh v. Boy Scouts of Am.*, 993 F.2d 1267, 1272 (7th Cir. 1993) (Boy Scouts of America is not a "place of public accommodation" under Title II because it is not "closely connected to a particular facility.").

Unsurprisingly, internet platforms are not considered public places of accommodation because their services lack a sufficient connection to a physical facility. In *Noah v. AOL Time Warner Inc.*, the court concluded that AOL's online chat forums were not a public place of accommodation for purposes of Title II because "although a chat room or other online forum might be referred to metaphorically as a 'location' or 'place,' it lacks the physical presence necessary to constitute a place of public accommodation under Title II." 261 F. Supp. 2d 532, 544–45 (E.D. Va. 2003); *see also Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110 (N.D. Cal. 2011) (Facebook is not a public place of accommodation under Title III of the ADA.).

Applying this reasoning, Facebook is not a public place of accommodation as its website lacks a tangible connection to a physical location. Facebook plainly cannot be categorized as an "establishment which provides lodging to transient guests" or a "facility principally engaged in selling food for consumption on the premises." *Noah*, 261 F. Supp. 2d at 541; § 2000a(b)(1)–(2). And just like a chat room, Facebook's existence as an online forum means it cannot be considered a "place of entertainment" or an any other physical "establishment" which a member of the public can be granted of denied access to. *See Noah*, 261 F. Supp. 2d at 544–45; § 2000a(b)(3)–(4). After all, Facebook's role as an online website is *exactly* what allowed Plaintiff to attract "more than 450,000 regular followers," to entice more than "18 million" readers, and to join the 60,000-member strong "Friends of Ebeid" group all in the same website. Compl. ¶¶ 13, 22. And because Facebook is not a place of public accommodation, Plaintiff's Title II claim must be dismissed.

### b. California's Unruh Civil Rights Act Does Not Apply

#### (i) The Alleged Discrimination Did Not Occur in California

Without considering the strength of Plaintiff's allegations, this Court has a preliminary reason to dismiss Plaintiff's Unruh Act claim: Plaintiff, an Arizonian, cannot claim protection from the Unruh Act because the statute does not apply outside California. The Unruh Act

"contains language expressly limiting its reach to all persons within the jurisdiction of this state." *Sousanis v. Nw. Airlines, Inc.*, 2000 WL 34015861, at *7 (N.D. Cal. Mar. 3, 2000) (citations omitted). It states that "persons **within the jurisdiction of this state** are free and equal . . . ." Cal. Civ. Code § 51(b) (emphasis added). Accordingly, individuals outside the state cannot mount an Unruh Act claim against a California company. *See Tat Tohumculuk, A.S. v. H.J. Heinz Co.*, 2013 WL 6070483, at *7 (E.D. Cal. Nov. 14, 2013) (stating that the court is not aware of any case law "applying section 51[of the Unruh Act] to alleged discrimination suffered by parties outside of California"). In *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1099 (C.D. Cal. 2015), a Florida resident accused a California company's subscription service of discriminating on the basis of age. The court dismissed the Unruh Act claim because the complaint did not allege that any discrimination against the plaintiff took place in California. *Id.*

According to the Complaint, Plaintiff, "at all time[s] relevant to this action, was a resident of Maricopa County in the State of Arizona." Compl. ¶ 8. Applying the Unruh Act's prohibition against exterritorial application, the statue cannot afford any protection to Ebeid.

### (ii)      Plaintiff Does Not Allege Intentional Discrimination

Even if Plaintiff was eligible to proceed under the Unruh Act, his complaint would still fail to state a claim under the statute. The Unruh Act protects against discrimination on the basis of "sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation . . . ." Cal. Civ. Code § 51(b). But the Unruh Act applies only to "*willful*, *affirmative* misconduct . . . ." *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824, 853–54 (2005) (citations omitted). To establish a violation of the Unruh Act independent of a claim under the Americans With Disabilities Act, a plaintiff must "plead and prove intentional discrimination." *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014) (citation omitted).

Here, Plaintiff's complaint does virtually nothing to allege that Facebook intentionally discriminated on the basis of a protected category. It only asserts that Facebook "knowingly and willfully restricted Dr. Ebeid's access to its services, based on characteristics protected under subdivision (b) [of the Unruh Act]." Compl. ¶ 54. But Plaintiff does not even allege *which*

13

protected category Facebook discriminated on the basis of when it restricted Plaintiff's content. Moreover, even if some protected class could be inferred from the Complaint, his allegations do not describe why that class was a motivating reason for Facebook's actions here.  *See Smith v. Pride Mobility Prods. Corp.*, No. 16-CV-04411-LHK, 2016 WL 6393549, at *4 (N.D. Cal. Oct. 28, 2016) (dismissing Unruh Act claim for failing to allege that defendant intentionally discriminated against plaintiff or that plaintiff's protected status "was a motivating factor" for the alleged discrimination).  Accordingly, Plaintiff's failure to properly allege any intentional discrimination on Facebook's part warrants dismissal of the Unruh Act claim.

### B.    The Complaint's Boosting Claims Should be Dismissed with Prejudice

Separate from his claims of content restrictions, Plaintiff alleges that in April and May 2018, Facebook failed to "boost," or promote, his posts to a sufficient number of other users.  *See* Count IV, Compl. ¶¶ 56–63 (Fraud), Count V, *id.* ¶¶ 64–68 (Breach of Contract), Count VI, *id.* ¶¶ 69–74 (Breach of the Implied Covenant of Good Faith and Failing Dealing), and Count VII, *id.* ¶¶ 75-78 (UCL).  Each of these allegations fail to a state a claim for relief.

#### 1.    Plaintiff Fails to Allege a Breach of Any Contractual Term (Count V)

Although Plaintiff alleges Facebook breached its contract, he never identifies what contract is at issue or what contractual provision was breached.  In a breach of contract action, "a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached."  *Smith v. Capital One Fin. Corp.*, No. C 11-3425 PJH, 2012 WL 1669347, at *5 (N.D. Cal. May 11, 2012); *see Frances T. v. Vill. Green Owners Ass'n*, 42 Cal. 3d 490, 512–13 (1986).  Here, Plaintiff claims that "Facebook and Dr. Ebeid had entered into a contract for the use of Facebook's social networking public forum, and use of Facebook's advertising platform[,]" and that Facebook was in breach by "failing to boost Dr. Ebeid's posts despite notifying Dr. Ebeid that the posts have in fact been boosted."  Compl. ¶¶ 65–67.  Such allegations cannot state a breach-of-contract claim since they "provide[] no further specificity as to what contractual provisions Facebook allegedly violated."  *Young*, 790 F. Supp. 2d at 1117.

1    In any event, when Facebook's user contracts are analyzed, it is evident that Plaintiff can

2    state no claim for any breach.  Although he does not attach it to his complaint, Plaintiff references

3    and quotes from the Facebook Terms of Service ("TOS").  *See* Compl. ¶ 6 n.1.  Consequently,

4    this Court may consider the TOS in evaluating the present motion.  *See Knievel v. ESPN*, 393

5    F.3d 1068, 1076 (9th Cir. 2005) (A court may "take into account documents whose contents are

6    alleged in a complaint and whose authenticity no party questions, but which are not physically

7    attached to the [plaintiff's] pleading." (citations omitted)).

8         Facebook's Terms of Service is a general-purpose contract that governs Facebook's

9    relationship with all of its users.  The TOS explicitly reference and incorporate a set of *additional*

10   contract provisions specific to particular uses of the platform such as to make payments or to

11   share music.   Two other additional contract provisions—the Advertising Policies and Self-

12   Service Ad Terms ("SSAT")—govern advertising on Facebook.  The TOS, Advertising Policies,

13   and SSAT grant Facebook complete discretion over the placement of any boosted posts.[3]  These

14   advertising terms govern Facebook's obligations here because, as Plaintiff notes, boosting treats a

15   user post as an advertisement to other users.  Compl. ¶ 14.  Section 1.5 of the operative

16   Advertising Policy provides:

> [Facebook] reserve[s] the right to **reject, approve or remove any ad for any
> reason, in our sole discretion, i**ncluding ads that negatively affect our
> relationship with our users or that promote content, services, or activities, contrary
> to our competitive position, interests, or advertising philosophy.

Yu Decl. Ex. C (emphasis added).[4]  The SSATs state a similar principle.  The SSATs apply when

a user uses "the Self-Serve Ad Interfaces to create, submit, or deliver any advertising or other

---

[3]  The TOS was amended on April 19, 2018, which falls in the middle of Plaintiff's boosting
allegations.  *See* Yu Decl., Ex. A at 1.  Before April 2018, the operative user agreement was the
January 2015 "Statement of Rights and Responsibilities."  *See id.*, Ex. B at 1.  To avoid
confusion, Facebook will refer to the April agreement also as the "Terms of Service."

[4]  Because the operative Advertising Policy was last updated in May 2016, both the November
2017 and April 2018 TOS incorporate the same Advertising Policies.  *See* Yu Decl., Ex. C.

1315855.v10

commercial or sponsored activity or content." Yu Decl. Ex. A at 3; Ex. B at 4.[5]  The November

2017 version of the agreement, attached in Exhibit D of the Yu Declaration, states:

- **SSAT #6:** "We will determine the size, placement, and positioning of your ads."
- **SSAT #7:** "We do not guarantee the activity that your ads will receive, such as the number of clicks your ads will get"
- **SSAT #13:** "We may reject or remove any ad for any reason."[6]

These provisions foreclose any possible breach-of-contract claim Plaintiff could mount.  By

agreeing to use Facebook's advertising services, Plaintiff agreed that Facebook had complete

discretion over the reach of any of his boosted ads.  Accordingly, even if Facebook did not

promote Plaintiff's posts to Plaintiff's liking, limiting the reach of Plaintiff's posts is well within

Facebook's discretionary power under its contracts with its users and advertisers.  Plaintiff's

breach of contract claim should thus be dismissed with prejudice.

2.   **Because Plaintiff's Breach of Contract Claim Fails, His Breach of Implied Covenant Claim Also Fails as Well. (Count VI)**

Because Plaintiff has failed to state a claim for a breach of contract, his implied covenant

claim must fail as well.  The implied covenant "cannot impose substantive duties or limits on the

contracting parties beyond those incorporated in the specific terms of their agreement."  *Guz v.

Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349–50 (2000).  "The covenant of good faith is read into

contracts in order to protect the express covenants or promises of the contract, not to protect some

general public policy interest not directly tied to the contract's purposes."  *Foley v. Interactive*

---

[5]  The SSAT was amended in May 2018.  Yu Decl., Ex. E at 2.  Facebook cites from both the November 2017 SSAT, the operative agreement before May 2018, and the new, May 2018 SSAT.

[6]  The May 2018 SSATs recite the same principle.  As noted in the January TOS, the May SSAT "apply [to users who] use the Self-Serve Ad Interfaces to create, submit, or deliver advertising or other commercial or sponsored activity."  Yu Decl., Ex. B at 4.  The May SSATs, *id.*, Ex. E., state:

- **SSAT #3:** "We may reject or remove any ad for any reason."
- **SSAT #6:** "We will determine the size, placement, and positioning of your ads."
- **SSAT #8**: "We do not guarantee the reach or performance that your ads will receive, such as the number of people who will see your ads or the number of clicks your ads will get."

16

1315855.v10

*Data Corp.*, 47 Cal. 3d 654, 690 (1988).  If a defendant's actions are "expressly authorized" by contract, there can be no breach of an implied covenant.  *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 56–57 (2002); *see Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992) (same).  Plaintiff's implied covenant claim is based on the same theory as his breach of contract claim.  *See* Compl. ¶¶ 69–74.  Because Facebook's actions are authorized by contract, Plaintiff's implied covenant claim must also be dismissed with prejudice.

3.    <strong>Plaintiff Fails to State a Claim for Fraud (Count IV)</strong>

In a duplication of his breach-of-contract claim, Plaintiff alleges that Facebook's failure to boost his posts also constituted fraud.  Compl. ¶¶ 56–63.  Plaintiff, however, does not allege that Facebook ever represented that a boosted ad would reach a certain number of users, that any alleged omission on Facebook's part was done with an intent to defraud, or that there was any resulting damage to Plaintiff.  Accordingly, his claim for fraud must be dismissed.[7]

To plead an action for fraud, a plaintiff must allege: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage."  *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997) (citations omitted).  In addition, a plaintiff in federal court must satisfy Federal Rule of Civil Procedure Rule 9(b), which demands that "the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge."  *Vess v. Ciba-Geigy*

---

[7]  Plaintiff also characterizes his fraud claim as one for "intentional misrepresentation."  The tort of intentional misrepresentation has functionally the same elements as a claim for common law fraud.  A plaintiff must show that "(1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff *reasonably relied on the representation*; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff."  *Manderville v. PCG&S Grp., Inc.*, 146 Cal. App. 4th 1486, 1498 (2007) citations omitted).  For pleading purposes, Facebook treats both actions as the same, as the same pleading defects apply to both causes of action.

17

1315855.v10

1   *Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  "Averments of fraud must be accompanied by

2   'the who, what, when, where, and how' of the misconduct charged." *Id.*

3                              **a.**      **Plaintiff Does Not Allege any Material Misrepresentation**

4           Plaintiff fails to allege the "what" of any alleged fraud.  He does not claim that Facebook

5   failed to boost his posts.  Of the two posts he cites, one was allegedly boosted to 63 users and

6   another allegedly reached three users.  Compl. ¶ 37.  Instead, Plaintiff complains that his posts did

7   not reach as many users as he wanted.  Plaintiff suggests that since previous posts had reached a

8   larger number of users, the boosted posts from April and May 2018 should have had similar

9   results.  *See id.*

10           To mount such a claim, Plaintiff needs to allege that Facebook made a representation

11   concerning the range or number of users that a boosted post would reach.  He does not.  At most,

12   Plaintiff claims that he relied on only one statement from Facebook, a notification by Facebook

13   that his posts were "being boosted and published as an advertisement to the people in the

14   designated demographic." *Id.* ¶ 38.  There is nothing from this statement that refers to a promise

15   about the number of individuals that his boosted posts would reach.  Therefore, there cannot be a

16   material misstatement or a subsequent reliance on that misstatement.

17           Plaintiff's failure to point to a material misstatement is not surprising; in fact, Plaintiff

18   cannot amend his pleadings to cure either of these defects.  As noted, Facebook does not

19   affirmatively guarantee that a particular range of users will see his ads.  *See* Yu Decl. Ex. D

20   (SSAT Nos. 6, 7, 13); Ex. E (SSAT Nos. 3, 6, 8).  Not only does this undercut any allegation that

21   Plaintiff could mount concerning Facebook's statements, but it also directly suggests that it was

22   unreasonable for Plaintiff to rely on Facebook's mere notification that a post was boosted as a

23   guarantee by Facebook that Plaintiff's posts would reach a certain number of users.

24                              **b.**      **Plaintiff fails to properly allege scienter**

25           Plaintiff also fails to allege scienter on Facebook's part.  Plaintiff claims that Facebook's

26   statement that his posts were being boosted was a knowingly false statement, or at least made

    with reckless disregard of the truth, because Facebook was aware of the more modest number of

    users that Plaintiff's boosted posts reached.  *See* Compl. ¶¶ 38, 59–60.

18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Under California law, a defendant's failure to perform as promised "becomes tortious only when it also violates an independent duty arising from principles of tort law." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994).  Otherwise, any alleged breach of contract claim could be instantly transformed into a duplicate fraud claim.  *See id.*; *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999) ("An omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty").  Indeed, courts routinely dismiss plaintiffs' attempts to repackage run of the mill breach of contract claims as fraud claims for this precise reason.  *See JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1042 (N.D. Cal. 2012); *Sterling Cross Def. Sys., Inc. v. Dolarian Capital, Inc.*, No. 1:13-CV-01773-AWI, 2014 WL 2767401, at *4 (E.D. Cal. June 18, 2014).

Here, Plaintiff has not alleged any fraudulent intent by Facebook that would elevate his breach of contract claim to a fraud claim because the Complaint does not allege that Facebook *believed* that it was obligated to boost his post to a specific number of users.  Even if Facebook's notification that a post was being boosted could be reasonably interpreted as a promise that Facebook would boost Plaintiff's posts to his desired range of users, Compl. ¶ 38, the "mere nonperformance of a promise is typically inadequate to demonstrate fraudulent intent." *J2 Cloud Servs., Inc. v. Fax87*, No. 13-05353 DDP (AJWX), 2016 WL 6833904, at *3 (C.D. Cal. Nov. 18, 2016); *see Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1019 (N.D. Cal. 2015) (The "[m]ere failure to pay without more does not plausibly show any intent to defraud or induce reliance . . . .").  At best, Plaintiff's allegations only show that there was a *disagreement* over Facebook's obligations to boost his posts, *i.e.*, that Plaintiff believed Facebook promised to boost his posts to a specific number of individuals, while Facebook allegedly knowingly failed to promote his post to that same number of individuals.  Such a claim cannot give rise to an inference of scienter.

### c.   **Plaintiff fails to allege any resulting damage**

Finally, Plaintiff's fraud claim fails because he does not articulate a theory of harm.  "To state a claim for fraud, a plaintiff must plead facts suggesting that the damages in question were the direct result of the misrepresentation in question." *Shahangian v. Bank of Am. Nat'l Ass'n*, No. CV15-1919 DMG, 2015 WL 12696038, at *4 (C.D. Cal. Dec. 1, 2015).  Plaintiff only alleges

19

1315855.v10

that he paid "a substantial sum of money per month" for Facebook to boost his ads.  *Id*. ¶¶ 14, 39.  But Plaintiff does ***not*** allege that he was overcharged, *i.e.* that he paid for ads that were never delivered.  Consequently, Plaintiff fails to plead any damages from Facebook's non-existent fraud and this claim must be dismissed.

C.    **Plaintiff's UCL Claim Fails Because Plaintiff Fails to Allege that Facebook Engaged in Any Unlawful Conduct (Count VII)**

Plaintiff's final claim accuses Facebook of violating the UCL.  At the end of his Complaint, Plaintiff asserts that all of Facebook's actions were "unlawful" because of their violation of application federal and California law.  Compl. ¶ 77.  Because Plaintiff has failed to allege any other viable cause of action, his UCL claim must also be dismissed with prejudice.  *See Krantz v. BT Visual Images, LLC*, 89 Cal. App. 4th 164, 178 (2001) (granting summary judgment on UCL claim when underlying state law claim was also dismissed).

D.    **Plaintiff's Request for Relief Is Improper**

Finally, regardless of the substance of his pleadings, Plaintiff cannot demand special and punitive damages in this case.  In his prayer for relief, Plaintiff requests general, special, and punitive damages.  Compl. Prayer ¶ 2.  Such a request for relief is directly barred by section 4.3 of Facebook's TOS, which states:

> Accordingly, our liability shall be limited to the fullest extent permitted by applicable law, and under no circumstance will we be liable to you for any **lost profits, revenues, information, or data, or consequential, special, indirect, exemplary, punitive, or incidental damages** arising out of or related to these Terms or the Facebook Products, even if we have been advised of the possibility of such damages.

Yu Decl. Ex. A (emphasis added).  Such a request is improperly brought and should be dismissed from the complaint.  *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (a claim that a party's contract bars a form of recovery should be brought as a motion to dismiss or at summary judgment).

1315855.v10

### IV.   PLAINTIFF'S UNRUH ACT AND UNFAIR COMPETITION LAW CLAIMS SHOULD BE STRICKEN AND FEES SHOULD BE AWARDED TO FACEBOOK

Plaintiff's Unruh Act and UCL claims are not merely barred as a matter of law, to the extent they are premised on the Complaint's content-restriction allegations, they are also an attempt to chill Facebook's right to free speech and should be struck under California's Anti-SLAPP statute.  Cal. Civ. Proc. Code § 425.16.

California favors the summary resolution of First Amendment cases because of the special burden such litigation places on free speech.  *See Good Gov't Grp. v. Super. Ct.*, 22 Cal. 3d 672, 685 (1978).  Consistent with this policy, section 425.16 of the California Code of Civil Procedure provides "a mechanism through which complaints that arise from the exercise of free speech rights 'can be evaluated at an early stage of the litigation process' and resolved expeditiously." *Simmons v. Allstate Ins. Co.*, 92 Cal. App. 4th 1068, 1073 (2001).[8]

Section 425.16 involves a two-part, burden-shifting test.  *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002).  ***First***, the defendant must show that the plaintiff's claims arise from the defendant's activities in furtherance of the constitutional right of free speech in connection with an issue of "public interest," as defined by section 425.16(a).  The standard for a defendant's threshold showing is lenient, as "a court must generally *presume the validity of the claimed constitutional right in the first step* of the anti-SLAPP analysis, and then permit the parties to address the issue in the second step of the analysis, if necessary."  *Cable News Network, Inc.*, 742 F.3d at 422 (emphasis added) (citations omitted).  ***Second***, the burden then shifts to the plaintiff to show a probability of success on the merits of his claims.  If the plaintiff cannot show a probability of prevailing on a claim, the claim is stricken.  *Navellier*, 29 Cal. 4th at 89.  In evaluating an anti-SLAPP motion, the court must "consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."  § 425.16(b)(2).

---

[8]  Federal courts apply the anti-SLAPP statute in federal diversity actions and as to state law claims joined in federal question cases.  *United States ex rel Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999); *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 63 F. Supp. 2d 1127, 1129–30 (N.D. Cal. 1999).

### A.     Plaintiff's Claim Arises Out of Facebook's Exercise of its Free Speech Rights

A defendant meets its burden under the first prong of the Anti-SLAPP test by showing either (1) that the plaintiff's claims target expressive activity on a "public forum" in connection with an issue of public interest, Cal. Civ. Proc. Code § 425.16(e)(3), or (2) that plaintiff's claims target "conduct in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public interest." § 425.16(e)(4).  To determine whether a defendant has met its burden, the court focuses on a defendant's "activity that gives rise to his or her asserted liability," *Navellier*, 29 Cal. 4th at 92, *i.e.*, "whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech." *Kronemyer v. Internet Movie DataBase, Inc.*, 150 Cal. App. 4th 941, 946 (2007).  Facebook satisfies this burden with respect to Plaintiff's Unruh Act and Unfair Competition Law claims.

### 1.     Facebook is a Public Forum for Anti-SLAPP purposes

The Facebook platform is a public forum for purposes of the Anti-SLAPP statute.  A public forum is simply a place that is "accessible free of charge to any member of the public where members of the public may read the views and information posted, and post their own opinions."  *hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1116 (N.D. Cal. 2017) (citations omitted).  Prior courts have already held that Facebook satisfies this requirement.  *See, e.g.*, *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 199 (2017) ("It cannot be disputed that Facebook's website and Facebook pages at issue are 'public forums' as they are accessible to anyone who consents to Facebook's terms."); *Diamond Ranch Acad., Inc. v. Filer*, 2016 WL 633351, at *6 (D. Utah Feb. 17, 2016) ("[P]ublic Facebook pages on which [defendant] allegedly posted comments all fall within the definition of a public forum" for anti-SLAPP purposes.).  *See also Wong v. Jing*, 189 Cal. App. 4th 1354, 1366 (2010) (Yelp! website was public forum for anti-SLAPP purposes).[9]

---

[9]  To be clear, the concept of a "public forum" under anti-SLAPP statute is different than the concept of a government-created "public forum" for First Amendment purposes.  *See hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1117 (N.D. Cal. 2017); *see also Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1036 (2008) (discussing the definition of a "public forum" for anti-SLAPP purposes).

2.      **Plaintiff Targets an Issue of Public interest**

"[A]n issue of public interest . . . is any issue in which the public is interested." *Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1134 (C.D. Cal. 2015) (citations omitted).  Courts "construe[] broadly" whether "something is an issue of public interest" and focus on "the principal thrust or gravamen of the plaintiff's cause of action." *Cross*, 14 Cal. App. 5th at 199.

Here, as Plaintiff himself alleges, his ECL page emphasizes "the religious, historical, geographical, and cultural ties that connects all Christians, Muslims, and Jews in Egypt and the Middle East."  Compl. ¶ 13.  And much of Plaintiff's posts target political developments surrounding the United Kingdom's ambassador to Egypt.  *See, e.g.*, *id.* ¶¶ 16, 29–34.  Accordingly, even if Plaintiff's allegations are taken as true, Facebook's exercise of editorial control over the posting of such content also affects these same political issues.  *See Nagel v. Twin Labs., Inc.*, 109 Cal. App. 4th 39, 47 (2003) ("Political speech is at one end of the spectrum and is protected under the First Amendment and section 425.16.").

Alternatively, Plaintiff also purport to use this lawsuit as a vehicle to challenge Facebook's ability to moderate and alter content on its platform.  Facebook's ability to exercise discretionary control across its platform is an issue of interest to the more than two billion people who use Facebook's services.  *Rivero v. Am. Fed'n of State, Cty., & Mun. Emps., AFL-CIO*, 105 Cal. App. 4th 913, 924 (2003) ("[C]onduct that could directly affect a large number of people beyond the direct participants" is an issue of public interest.).

3.      **Plaintiff Targets Expressive Activity**

Finally, to make explicit what is already apparent, Plaintiff's suit clearly targets an issue of expressive activity and conduct in furtherance of the exercise of the constitutional right of free speech.  As discussed above, Plaintiff directly seeks to curtail Facebook's ability to edit and control the content on its web platform and is a direct abridgement of Facebook's First Amendment rights as a speaker.  Lawsuits that target a forum operator's editorial discretion in the maintenance of its forum are "based on conduct in furtherance of free-speech rights and must withstand scrutiny under California's anti-Slapp statute." *See Cable News Network, Inc.*, 742 F.3d at 424-25; *Jeung v. Yelp, Inc.*, 2015 WL 4776424, at *3 (N.D. Cal. Aug. 13, 2015).  Thus, in

23

1315855.v10

addition to implicating matters of public interest, Plaintiff's suit affects both "expressive activity" on a public forum, § 425.16(e)(3), and "conduct in furtherance of the exercise of the constitutional right of . . . free speech." § 425.16(e)(4).

### B.   Plaintiff Cannot Show a Probability of Success on the Merits

Once a defendant has shown that an asserted claim falls within section 425.16, a plaintiff must "demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Navellier*, 29 Cal. 4th at 88–89. As explained above, Plaintiff cannot show a probability of success on the merits of his Unruh Act claim and his Unfair Competition Law claim as it concerns content restrictions.

### C.   Facebook Should Be Awarded its Attorney's Fees and Costs for Moving to Strike the Unruh Act and Unfair Competition Law Claim.

Facebook requests this Court award attorney's fees and costs, in an amount to be determined upon subsequent submission by Facebook. § 425.16(c)(1) ("[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs."). An award of attorney's fees is mandatory for a prevailing defendant. *Pfeiffer Venice Props. v. Bernard*, 101 Cal. App. 4th 211, 215 (2002).

## V.   CONCLUSION

Facebook respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice, strike the Unruh Act and Unfair Competition Law (insofar as it concerns content restrictions), and award Facebook attorney's fees and costs.

Dated:  January 18, 2019

KEKER, VAN NEST & PETERS LLP


By:   /s/ *Victor H. Yu*
PAVEN MALHOTRA
VICTOR H. YU

Attorneys for Defendant
FACEBOOK, Inc.

24